UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JEFFREY BLAIR JOHNSON, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:14-CV-00021-JCN |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
|     Defendant | ) | |

## MEMORANDUM OF DECISION[1]

Plaintiff Jeffrey Johnson applied for disability benefits under Title II and Title XVI of the Social Security Act. Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments, but that he retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

The matter is before the Court on Plaintiff's request for judicial review of the administrative determination. As explained below, following a review of the record, and after consideration of the parties' written and oral arguments, the Court affirms the administrative decision.

### THE ADMINISTRATIVE FINDINGS

Although Plaintiff initially applied for benefits under Title XVI and Title II, Plaintiff amended the date of alleged onset of disability, which date falls outside of the period for which Plaintiff had insured status under Title II. Consequently, the ALJ dismissed the Title II claim and the only claim before the Court is Plaintiff's claim for supplemental security income benefits under

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and enter a final order and judgment in this matter.

Title XVI.[2]

The decision of the Administrative Law Judge (ALJ)[3] tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 416.920. At step 1 of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity from December 31, 2009, the amended date of alleged onset of disability. (ALJ's Decision, ECF No. 6-2, ¶ 1.) At step 2, the ALJ determined that Plaintiff has the following severe impairments:

    Cervical and lumbar degenerative disk disease;

    Borderline intellectual functioning;

    Affective disorder / depression (not otherwise specified);

    Personality disorder with antisocial traits; and

    Substance addiction disorder.

(*Id.*, ¶ 2.) The ALJ also concluded that the following impairments were non-severe: arthritic knee pain, alleged symptoms related to kidney and liver function, and complaints of shoulder and ankle pain. (*Id.*)

At step 3, the ALJ found that the combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, with specific attention given to Listings 1.04, 12.02, 12.04, and 12.08. The ALJ determined that Plaintiff's mental limitations impose mild limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace.

---

[2] Plaintiff does not challenge the dismissal of his Title II claim in his Statement of Errors.

[3] Because the Appeals Council "found no reason" to review that decision, the Acting Commissioner's final decision is the April 19, 2012, decision of Administrative Law Judge John F. Edwards.

(*Id.*, ¶ 3.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity (RFC). As to Plaintiff's Statement of Errors,[4] the ALJ did not find any limitation in Plaintiff's ability to use his upper extremities to reach, grasp, or turn and twist objects,[5] and found that Plaintiff can interact with coworkers and supervisors and, on occasion, with the public. (*Id.*, ¶ 4.)

Using the Medical-Vocational Guidelines (the "Grid") as a framework for decision-making at step 5, the ALJ concluded that Plaintiff could still engage in other substantial gainful employment, including as an assembler of plastics, a scanner/check processor, and an assembler of printed products. (*Id.*, ¶ 9.) Based on his findings, the ALJ determined that Plaintiff has not been under a disability. (*Id.*, ¶ 10.)

## DISCUSSION

Plaintiff asserts two points of error. First, Plaintiff maintains that in his residual functional capacity assessment, the ALJ improperly interpreted raw medical data, and failed to rely on a medical opinion to support his mental RFC determination. (Statement of Errors at 2-3, ECF No. 10.) Second, Plaintiff argues that the ALJ erred because he failed to contact a treating source regarding Plaintiff's upper extremities limitations. (*Id.* at 3-4.)

### A. Standard of Review

The Court must affirm the administrative decision provided that the ALJ applied the correct legal standard, and provided that the ALJ's decision is supported by substantial evidence, even if the record contains evidence that would support an alternative outcome. *Manso-Pizarro v. Sec'y*

---

[4] The ALJ's other RFC findings are not challenged in Plaintiff's Statement of Errors.

[5] The ALJ found that Plaintiff "should avoid overhead work," based on cervical degenerative disk disease, which would place some limit on reaching activity. (ALJ Decision, ¶ 4.)

3

of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B. Analysis**

   *1. Mental RFC*

Plaintiff contends that the ALJ erred when he failed to find further social restrictions. In particular, Plaintiff maintains that his difficulty interacting with coworkers and supervisors due to his diagnosed antisocial personality disorder, which the ALJ found to be a severe impairment at step 2, warrants a more significant mental RFC finding. (Statement of Errors at 2-3.) Defendant argues that the ALJ's mental RFC finding is supported by the opinions of Drs. Stahl and Quinn, and by the ALJ's credibility assessment of Plaintiff's subjective complaints. (Response at 2-5.)

On November 1, 2010, Brian Stahl, Ph.D., completed a psychiatric review technique form (PRT) and mental RFC assessment. In his review of the listings on the PRT form (Exh. 10F, ECF No. 6-9), Dr. Stahl did not note the presence of a personality disorder (*see* PageID # 517). Additionally, in reference to the "B" criteria of the listing analysis, Dr. Stahl assessed only mild limitations in social functioning (*see* PageID # 520). In his review notes, Dr. Stahl described Plaintiff's alleged mental impairment as limited to depression, but noted that Edward Quinn, Ph.D., prepared a consultative examination report in which (1) he made a provisional diagnosis of personality disorder (NOS) and (2) opined that Plaintiff appears capable of relating to others

4

appropriately (*see* PageID # 522). In his mental RFC assessment (Exh. 11F, ECF No. 6-9), Dr. Stahl concluded that Plaintiff has a moderate limitation in his ability to interact with the public, and to accept instructions and criticism from supervisors. In his functional capacity assessment, however, Dr. Stahl concluded that Plaintiff would be able to work with coworkers and supervisors (*see* PageID # 525-26).

Dr. Stahl's conclusions are consistent with Dr. Quinn's findings. On October 28, 2010, Dr. Quinn provided a medical source statement in which he wrote that Plaintiff "generally appears capable of behaving in an emotionally stable manner" and "demonstrates adequate social skills." (Exh. 8F, ECF No. 6-8, PageID # 506.) Among other conditions, Dr. Quinn diagnosed "personality disorder NOS, provisional." (*Id.*) The findings of Drs. Stahl and Quinn thus support the ALJ's mental RFC finding.

The central issue is whether the ALJ's reference to the subsequent psychiatric evaluation conducted by Arthur Dingley, D.O., in March 2011, including the ALJ's incorporation of Dr. Dingley's assessment that Plaintiff's personality disorder is characterized by antisocial traits,[6] compelled a mental RFC with further social restrictions, or required the ALJ to seek an expert opinion regarding Plaintiff's mental RFC.

The mere fact that the record includes evidence that arguably could support additional limitations does not compel a different mental RFC assessment. Similarly, the evidence does not necessarily require the ALJ to request additional expert opinions. Instead, the Court must assess whether the ALJ's determination is supported by substantial evidence on the record. As part of that assessment, the Court should consider whether in making his determination, the ALJ

---

[6] In his report, Dr. Dingley found that Plaintiff met "most of the diagnostic criteria for antisocial personality disorder." (Exh. 14F, ECF No. 6-9, PageID # 539.)

5

impermissibly interpreted raw medical data.

In this case, the ALJ's mental RFC assessment is in accord with the findings and observations of two medical experts (Drs. Stahl and Quinn), the overall medical record, the factual record,[7] and the ALJ's credibility assessment. In this context, Dr. Dingley's record alone, in which record he observes that Plaintiff met "most of the diagnostic criteria for antisocial personality disorder," did not require a different assessment or further expert evidence. Simply stated, the ALJ's mental RFC assessment appropriately considered Plaintiff's social challenges.

### 2. Dr. Lee and limitation in Plaintiff's upper extremities[8]

Plaintiff argues that the ALJ was required to contact treating physician Marvin Lee, M.D., to determine the basis of Dr. Lee's opinion that Plaintiff has a substantial limitation on his ability to use his upper extremities to grasp and reach. (Statement of Errors at 3-5, citing Exh. 13F, ECF No. 6-9.) In his medical source statement, Dr. Lee imposed the limitations based on worsening pain in Plaintiff's right shoulder. (PageID # 532.)

The ALJ did not disregard the evidence. In fact, at Plaintiff's hearing, Peter Webber, M.D., addressed Dr. Lee's opinion. Initially, Dr. Webber expressed concern that the medical record appeared incomplete. (Transcript of Hr'g, ECF No. 6-2, PageID # 90.)[9] After being provided a

---

[7] For instance, Plaintiff's Report of Functioning (ECF No. 6-6, PageID # 244, 279-80) and the Report of Functioning provided by Plaintiff's mother (PageID # 267-68) reflect: that Plaintiff and his mother answered "no" to the question of whether Plaintiff has "any problems getting along with family, friends, neighbors, or others"; that Plaintiff's mother says she does not know of trouble with authority figures; and that Plaintiff says he gets along "ok" with authority figures.

[8] Plaintiff asserts, and Defendant does not dispute, that any error regarding Plaintiff's ability to use his upper extremities to reach and grasp objects would be material to Plaintiff's ability to perform the jobs identified at step 5 of the sequential evaluation process.

[9] The ALJ asked Plaintiff's hearing counsel whether there were records available to address Dr. Webber's concerns. (PageID # 93.) Relevant to the upper extremities question before the Court, hearing counsel indicated that the only missing item appeared to be a "last visit with Orthopedist Caldwell." (*Id.*) This missing record was not provided at a later date. In order for the Court to remand on the basis of a missing record from Dr. Caldwell, Plaintiff would minimally need to produce the record and demonstrate its materiality. *Caiazzo v. Colvin*, No. 2:13-cv-155-JAW, 2014 WL 1569529, at *3 (D. Me. Mar. 30, 2014) (recommended decision, adopted Apr. 17, 2014).

page that was missing from the relevant letter written by Dr. Lee (Exh. 13F), Dr. Webber was able to offer an opinion regarding the limitations on Plaintiff's upper extremities. (PageID # 93.)

Dr. Webber observed that the evidence regarding cervical degenerative disk disease[10] did not reflect nerve compression or radiculopathy. (PageID # 94-95.) He further testified that Plaintiff might have problems with overhead use, particularly on the right, though he did not know whether this restriction involved "some primary shoulder disorder." (PageID # 96.) In addition, addressing the issue of grasping and reaching, Dr. Webber testified that he did not "see enough to put any limitations on the hands or the wrists." (PageID # 96-97.) According to Plaintiff, "[i]f the ALJ could not discern the basis for the limitations, he was obligated to recontact Dr. Lee pursuant to Ruling 96-5p to determine the basis for the limitations." (Statement of Errors at 4.)

Social Security Ruling 96–5p, *Medical Source Opinions on Issues Reserved to the Commissioner,* states that for "treating sources" an adjudicator will endeavor to "recontact" the source for "clarification" when the record available to the adjudicator does not permit him or her to "ascertain the basis" for the physician's opinions. 1996 WL 374183, at *2, *6 Despite this special consideration for treating source opinion, a reviewing medical expert can testify that the treating source's opinion is not supported by sufficient evidence in the treatment records "without triggering an obligation on the part of the administrative law judge to recontact the provider for additional information." *Slobuszewski v. Soc. Sec. Admin. Comm'r,* No. 1:10–cv–00302–JAW, 2011 WL 2678954, at *9 (D. Me. June 7, 2011) (recommended decision, adopted July 26, 2011); *see also Paradise v. Astrue,* No. 1:10–cv–236–JAW, 2011 WL 1298419, * 6 (D. Me. Mar. 31, 2011) (recommended decision, adopted Apr. 19, 2011) (finding that the language of 20 C.F.R. § 416.912(e) "cannot reasonably be read to require an administrative law judge to contact a medical

---

[10] Plaintiff's Statement of Errors does not identify any records that would support a finding of extremity dysfunction premised on any other cause.

7

source whenever the administrative law judge would otherwise reject that source's opinion").

A review of Dr. Lee's medical source statement, which is a letter narrative accompanying the form, reveals that Dr. Lee imposed this particular limitation in response to Plaintiff's subjective report of symptoms. His sole reference to Plaintiff's arms is associated with a reference to Plaintiff's complaints related mainly to the low back and neck, with reported "radiation into his arms." (Exh. 13F, PageID # 533.) This narrative additionally includes, however, reference to activities such as moving firewood, using a chainsaw, and hand-splitting logs for up to three hours in a day, followed by intense pain the following day. (PageID # 534.)

The reported level of activity is considerably more intense than the light exertion capacity the ALJ allowed for in his RFC finding. Additionally, Plaintiff's reported level of activity is substantial evidence in support of the ALJ's decision to reject Dr. Lee's opinion that Plaintiff has a significant limitation in his upper extremities.

When Dr. Lee's opinion is viewed in the context of all of the medical and factual evidence, which includes Dr. Webber's opinion that the medical records do not reflect nerve involvement, that the medical records do not demonstrate a separate shoulder impairment, and that the medical records do not otherwise support Dr. Lee's opinion, the ALJ had a substantial evidentiary basis on which to rely when he found that Plaintiff had failed to establish an upper extremity limitation that would prevent Plaintiff from performing light-duty work other than overhead work. Furthermore, the ALJ's reliance Dr. Webber's testimony demonstrates that he was not confused about the basis for Dr. Lee's opinion but, instead, rejected Dr. Lee's opinion based on evidence that a reasonable person would consider adequate to support the conclusion that Plaintiff is able to use his upper extremities for purposes of light-duty work.

## CONCLUSION

Based on the foregoing analysis, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of January, 2015.